**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Elik Essif,                                                      )
                                                                )
                    Plaintiff,                                  )
                                                                )        No. CIV 19-00596-TUC-CKJ
vs.                                                             )
                                                                )
Arizona  Board  of  Regents;  Larry  E.                         )        **ORDER**
Penley, in his official capacity as Chair of                    )
the Arizona Board of Regents; Robert C.                         )
Robbins,  in  his  official  capacity  as                       )
President of the University of Arizona; and                     )
Ioannis  Stasinopoulos,  in  his  individual                    )
capacity,                                                       )
                                                                )
                    Defendants.                                 )
_____)

        Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint (Doc. 18).  A response and a reply have been filed.  Although oral argument has

been requested, the Court declines to schedule this matter for argument.


*Factual and Procedural Background*[1]

        Elik Essif ("Essif") began working for the University of Arizona ("UA") in 1985

around the time he was awarded a Master of Science degree from the UA.  Around 2008,

Essif was promoted to Coordinator of Cancer Center Facilities; he continued in this position

until his contract was not renewed by UA.

        Essif has been certified in lab safety since 2001, received his Building Management

_____

        [1]Unless otherwise stated, the facts are taken from the First Amended Complaint.

1   Emergency Preparedness certification from the UA in 2004, received a Facilities

2   Management certificate from Rockhurst College in 2004, completed Building Safety Officer

3   Training at the UA in 2009, and received a scholarship to enroll in the Facilities

4   Management Professional ("FMP") training, received an International Facilities

5   Management Association FMP certification, and obtained OSHA and ADA training in 2014.

6        Additionally, Essif has received a Ben's Bell award by the non-profit organization

7   of the same name and has served as the International Facilities Management Association

8   chapter president.  Further, Essif reengineered project management at the UA Cancer Center

9   to cut lab remodel costs.

10       As of 2016, Essif's responsibilities also included supervision of the Arizona Cancer

11   Center mailroom, which included one full-time mail clerk, one part-time employee, and the

12   delivery of equipment.

13       Essif consistently received exceeded expectations marks in annual performance

14   reviews and career conversations.  Essif maintained very good professional relationships

15   with his superiors.

16       Ioannis Stasinopoulos ("Stasinopoulos") began supervising Essif in or around June

17   2017.  On February 26, 2018, Stasinopoulos notified Essif that he would be hiring a

18   Facilities Manager to assist him because Essif was "too old and feeble."

19       Stasinopoulos communicated his view that Essif was too old too perform the job to

20   Essif and openly displayed disdain of Essif's age.  Stasinopoulos told Karlie Passey

21   ("Passey"), who was then employed in the UA Human Resources Department, "[Mr. Essif]

22   cannot do the job – he's too  old!"  When Passey explained her shock at Stasinopoulos's

23   animus against Essif and legal protections against age discrimination, Stasinopoulos stated,

24   "Just look at [Mr. Essif]. Are we going to ignore the obvious?"  Passey reported what had

25   happened to her supervisor, Gina Harms.  Stasinopoulos ignored the admonitions regarding

26   the protections against age discrimination.

27       It was common knowledge that Essif needed a hip replacement and because of this

28

he walked with what Stasinopoulos called an "aged gait."   Essif had left hip replacement surgery on August 3, 2016 which caused him to limp when he walked as it was planned to be corrected in further surgeries.  In May 2018, Essif had another hip surgery that corrected this.  Essif's FMLA request to have his right hip replacement surgery to correct the limp was granted on March 28, 2018.

In or around March 2018, the newly hired Facilities Manager, who is significantly younger than Essif, began working but was not assigned to assist Essif with his work.

Stasinopoulos gave Essif a notice of non-renewal on April 11, 2018, less than two months after he requested FMLA for his hip surgery.  Essif was not provided with any progressive discipline.  Essif's employment was terminated effective July 31, 2018.  He was notified of the non-renewal less than two months after he requested FMLA leave for his surgery.

After Essif was terminated by Defendants, and after he was forced financially to do so, Essif applied for and was granted retirement.  Essif had not planned on retiring until he would qualify for Medicare (approximately three years later).   The First Amended Complaint ("FAC") states:

> Disconcerted and while still in a state of disarray within days of being informed of his non-renewal in April 2018 and to save face, Mr. Essif informed Andres Gabaldon with UofA Human Resources that his intent was to retire in a few weeks anyway. However, Mr. Essif only retired at that time because he was forced to financially because of his termination.
>
> Indeed, Mr. Essif initially applied for unemployment benefits instead of retirement but since he had work compensation time accrued for unused vacation days and sick days, he would not be able to receive unemployment benefits at that time. Also, had Mr. Essif allowed an entire month to lapse without applying for retirement, he would have been penalized.

FAC, p. 6.

Essif filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), EEOC Charge No. 35A-2019-00010, on October 3, 2018, and received a right to sue to bring claims under the ADEA on or around September 25, 2019.

Essif filed a Complaint with this Court; he subsequently filed his FAC on June 10,

- 3 -

2020.  The FAC alleges the Arizona Board of Regents ("ABOR"), Chair of the ABOR Larry E. Penley ("Penley"), and President of the UA Robert C. Robbins ("Robbins") (collectively, "UA Defendants") discriminated against him in violation of the ADEA and interfered with his FMLA rights.  Penley and Robbins are sued in their official capacity (hereinafter referred to as "Official Capacity Defendants").  The FAC also alleges the UA Defendants and Stasinopoulos, in his individual capacity, interfered with his FMLA rights.

On June 30, 2020, UA Defendants and Stasinopoulos filed a Motion to Dismiss Plaintiff's First Amend Complaint (Doc. 18) ("MTD").  Essif has filed a response (Doc. 21) and UA Defendants and Stasinopoulos have filed a reply (Doc. 22).

*Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction which are presumptively without jurisdiction over civil actions. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction. *Id*.  Because subject matter jurisdiction involves a court's power to hear a case, it cannot be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002).  In fact, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); Fed.R.Civ.P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

A motion to dismiss for lack of subject matter jurisdiction may be either a facial attack or a factual attack. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) .  However, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

- 4 -

"Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *citations omitted*. The Ninth Circuit has stated:

> When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with "competent proof," *Hertz Corp. v. Friend*, [559 U.S. 77, 96–97 (2010)], under the same evidentiary standard that governs in the summary judgment context. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir.2010) (en banc); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987); Fed.R.Civ.P. 56(c). The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. *Harris*, 682 F.3d at 851. With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself. *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983); *Thornhill*, 594 F.2d at 733.[3]
>
> > [3]The caveat is that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim. *See, e.g., Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine*, 704 F.2d at 1077.

*Leite*, 749 F.3d at 1121–22. Where a factual attack is made "no presumptive truthfulness attaches to plaintiff's allegations." *Thornhill*, 594 F.2d at 733, *internal citation omitted*.

*ABOR and Official Capacity Defendants' Challenge Based on Eleventh Amendment Sovereign Immunity*

ABOR and the Official Capacity Defendants facially challenge the subject matter jurisdiction based on Eleventh Amendment sovereignty. They assert the Eleventh Amendment bars actions, claims and requests for monetary relief/money damages under the ADEA and the FMLA. Essif agrees "and has pleaded such in his First Amended Complaint." Response, p. 3; *see also* FAC. With the exception of the claims for front pay which the Court discusses *infra*, the Court will grant this portion of the Motion to Dismiss as to claims for monetary relief/money damages.

*Ex Parte Young Exception*

Unless they consent, states are immune from suit under the Eleventh Amendment in federal court. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). The Supreme Court has stated that this immunity also applies to unconsented suits brought by a State's own citizens. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Arms of the state, including subdivisions of the state, are entitled to this immunity. *Pittman v. State of Oregon, Employment Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007). The Ninth Circuit has determined the ABOR is "an arm of the State of Arizona for Eleventh Amendment purposes." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). Similarly, a state official "sued in his official capacity has the same immunity as the state, and is entitled to [E]leventh [A]mendment immunity." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992), *citing Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

In the Ninth Circuit, "an entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017), *citations omitted*. If a defendant meets this burden, the plaintiff must demonstrate that an exception applies in order for the court to have jurisdiction over the dispute. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir.2001). As summarized by the Ninth Circuit, three possible exceptions to the immunity exist:

> States are protected by the Eleventh Amendment from suits brought by citizens in federal court. [*Citations omitted.*] There are only three exceptions to this general rule. First, a state may waive its Eleventh Amendment defense. [*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999), *citing Clark v. Barnard*, 108 U.S. 436, 447–48, (1883)]. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. [*Kimel v. Florida Board of Regents*, 528 U.S. 62, 80 (2000)]. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks . . . prospective injunctive relief." [*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)].

*Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 817–18 (9th Cir.), *as amended*, 271 F.3d 910 (9th Cir. 2001). Defendants point out that the Ninth Circuit has clarified that a claim pursuant to *Ex parte Young* must be brought against individual persons in their

official capacities.  *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 648 (2002) ("the doctrine of *Ex parte Young* permits Verizon's suit to go forward against the state commissioners in their official capacities."); *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).  Essif has not demonstrated that the *Ex parte Young* exception applies to ABOR.

Indeed, because ABOR is a state agency, *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1288-89 (N.D. Cal. 2014) the *Ex parte Young* doctrine does not apply to the claims against the ABOR and the Eleventh Amendment bar remains in effect.  *See S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218, 1236-1238 (E.D. Cal. 2018).  In other words, because the request for prospective relief is against state agency ABOR, rather than an individual person in his/her capacity, the Eleventh Amendment bars the claims against ABOR.  The Court finds, therefore, the claims for prospective injunctive relief against ABOR must be dismissed for lack of subject matter jurisdiction.

Additionally, as to the claims for front pay, the parties disagree whether the claims are barred.  However, the Ninth Circuit has stated:

> As the Sixth Circuit held in *Freeman v. Michigan Dep't of State*, 808 F.2d 1174, 1179 (6th Cir.1987), an award of front pay is "barred by the Eleventh Amendment . . . since any payment . . . would come from the state treasury."  Even though a front pay award sounds like permissible "prospective" relief, it nevertheless constitutes an award of damages for a past constitutional violation—and the award is nevertheless paid directly from the state treasury, rather than from private individuals.

*Leeds v. Sexson*, 1 F.3d 1246 (9th Cir. 1993).  The Court finds the claims for front pay against ABOR and Official Capacity Defendants are a request for monetary relief and are not a request for prospective injunctive relief; the claims must be dismissed for lack of subject matter jurisdiction.

*Request for Prospective Injunctive Relief Against Official Capacity Defendants*

As to the claims for prospective injunctive relief ordering reinstatement against Official Capacity Defendants, Defendants argue the Court may resolve disputed evidence in resolving this factual attack challenge to subject matter jurisdiction.  When a defendant

1     raises a factual attack, the plaintiff must support his jurisdictional allegations with

2     "competent proof," *Hertz Corp. v. Friend*, [559 U.S. 77, 96–97 (2010)], under the same

3     evidentiary standard that governs in the summary judgment context. *See Norse v. City of*

4     *Santa Cruz*, 629 F.3d 966, 973 (9th Cir.2010) (en banc); *Trentacosta v. Frontier Pac.*

5     *Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987); Fed.R.Civ.P. 56(c). The plaintiff

6     bears the burden of proving by a preponderance of the evidence that each of the

7     requirements for subject-matter jurisdiction has been met. *Harris*, 682 F.3d at 851.

8     However, as previously stated, resolving disputed evidence in a factual attack is not

9     appropriate if the existence of jurisdiction turns on disputed factual issues. *Leite*, 749 F.3d

10     at 1121–22.

11         Essif's claim is dependent upon consideration of whether he retired and/or evidenced

12     an intent to retire before his contract was not renewed. This is intertwined with the factual

13     dispute as to whether Essif voluntarily rescinded his employment. As there is a material

14     factual dispute, dismissal of the claims for prospective relief against individual Defendants

15     in their official capacity is not appropriate. Essif's claim for declaratory and injunctive

16     relief reinstating him to his prior position against Official Capacity Defendants will be

17     permitted to proceed.

18

19     *Requirement that Action State a Claim on Which Relief Can be Granted*

20         A complaint is to contain a "short and plain statement of the claim showing that the

21     pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). A complaint must set forth a set of facts

22     that serves to put defendants on notice as to the nature and basis of the claim(s). The United

23     States Supreme Court has found that a plaintiff must allege "enough facts to state a claim

24     to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

25     (2007). While a complaint need not plead "detailed factual allegations," the factual

26     allegations it does include "must be enough to raise a right to relief above the speculative

27     level." *Id.* 555; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are

28

1    two alternative explanations, one advanced by defendant and the other advanced by plaintiff,

2    both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]").  Further,

3    Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a

4    blanket assertion" of entitlement to relief.  *Twombly*, 127 S.Ct. at 1965 n. 3.  The complaint

5    "must contain something more . . . than . . . a statement of facts that merely creates a

6    suspicion [of] a legally cognizable right to action."  *Id.* 1965.

7        The Court considers the Complaint in light of *Twombly* and must determine if

8    Plaintiffs have "nudge[d] [the] claims across the line from conceivable to plausible."  *Id.*

9    570.  The Court also considers that the Supreme Court has cited *Twombly* for the traditional

10   proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule

11   8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and

12   the grounds upon which it rests."  *Erickson v. Pardue*, 551 U.S. 89, 93 (2007).  Indeed,

13   *Twombly* requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a

14   claim with some factual allegations in those contexts where such amplification is needed to

15   render the claim *plausible.*"  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007); *see also*

16   *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (for a complaint to survive a

17   motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that

18   content, must be plausibly suggestive of a claim entitling the plaintiff to relief).

19       This Court must take as true all allegations of material fact and construe them in the

20   light most favorable to Plaintiff.  *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th

21   Cir. 2003).  In general, a complaint is construed favorably to the pleader.  *See Scheuer v.*

22   *Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other*

23   *grounds*, 457 U.S. 800.  Nonetheless, the Court does not accept as true unreasonable

24   inferences or conclusory legal allegations cast in the form of factual allegations.  *Western*

25   *Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

26       If a court determines that dismissal is appropriate, a plaintiff must be given at least

27   one chance to amend a complaint when a more carefully drafted complaint *might* state a

28

1   claim.  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).  Moreover, when dismissing

2   with leave to amend, a court is to provide reasons for the dismissal so a plaintiff can make

3   an intelligent decision whether to file an amended complaint.  *See Bonanno v. Thomas*, 309

4   F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).

5         Defendants also argue the claims must be dismissed for failing to state a claim upon

6   which relief may be granted.  Specifically, Defendants argue that Essif cannot state a claim

7   for some of the relief sought by Essif on his FMLA Interference Claim.  The applicable

8   statute states, *inter alia*:

9   **(1) Liability**

10  Any employer who violates section 2615 of this title shall be liable to any eligible
    employee affected –

11

12  (A) for damages equal to –

13      (i) the amount of –

14          (I) any wages, salary, employment benefits, or other compensation
    denied or lost to such employee by reason of the violation; or

15          (II) in a case in which wages, salary, employment benefits, or other
    compensation have not been denied or lost to the employee, any actual
16  monetary losses sustained by the employee as a direct result of the
    violation, such as the cost of providing care, up to a sum equal to 12
17  weeks (or 26 weeks, in a case involving leave under section 2612(a)(3)
    of this title) of wages or salary for the employee;

18
        (ii) the interest on the amount described in clause (I) calculated at the
19  prevailing rate; and

20      (iii) an additional amount as liquidated damages equal to the sum of the
    amount described in clause (I) and the interest described in clause (ii), except
21  that if an employer who has violated section 2615 of this title proves to the
    satisfaction of the court that the act or omission which violated section 2615
22  of this title was in good faith and that the employer had reasonable grounds
    for believing that the act or omission was not a violation of section 2615 of
23  this title, such court may, in the discretion of the court, reduce the amount of
    the liability to the amount and interest determined under clauses (I) and (ii),
24  respectively; and

25  (B) for such equitable relief as may be appropriate, including employment,
    reinstatement, and promotion.
26
    29 U.S.C.A. § 2617; *see also Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739–40,
27
    (2003) ("the cause of action under the FMLA is a restricted one:  The damages recoverable
28

- 10 -

1   are strictly defined and measured by actual monetary losses"). In fact, "[p]unitive,

2   consequential and nominal damages as well as damages for emotional distress are not

3   recoverable under the FMLA." *Blackburn v. Sturgeon Servs. Int'l, Inc.*, No.

4   1:13-CV-00054-JLT, 2014 WL 1275919, at *7 (E.D. Cal. Mar. 27, 2014); *Walker v. United*

5   *Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001) ("Because recovery is thus

6   unambiguously limited to actual monetary losses, courts have consistently refused to award

7   FMLA recovery for such other claims as consequential damages."). Essif's response does

8   not dispute this argument. Essif's request for mental anguish, emotional distress, pain and

9   suffering, humiliations and harm to reputation damages must be dismissed.

10          Defendants also assert that Essif has inadequately alleged he suffered any prejudice

11   by the alleged violation of the FMLA because Essif "intended to retire in the summer of

12   2018 before he was ever notified of his non-renewal." Motion, p. 15. Indeed, even where

13   a plaintiff has alleged an "employer violated § 2615 by interfering with, restraining, or

14   denying his or her exercise of FMLA rights . . . § 2617 provides no relief unless the

15   employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*,

16   535 U.S. 81, 89 (2002).

17          In this case, the FAC alleges that Essif was disconcerted from being advised of his

18   non-renewal and sought to save face by stating it was his intent to retire in a few weeks

19   anyway, but also alleges Essif did not intend to retire until he could qualify for Medicare,

20   approximately three years later. This allegations present a plausible explanation for Essif's

21   comments. *See also Starr*, 652 F.3d at 1216 ("If there are two alternative explanations, one

22   advanced by defendant and the other advanced by plaintiff, both of which are plausible,

23   plaintiff's complaint survives a motion to dismiss[.]". The Court finds the FAC sufficiently

24   alleges a claim upon which relief can be granted as to prejudice suffered by the alleged

25   FMLA violation.

26          Accordingly, IT IS ORDERED:

27          1.      The Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 18) is

28

1 | GRANTED IN PART AND DENIED IN PART.

2 |     2.    The ADEA and FMLA claims and requests for monetary relief/money

3 | damages against ABOR and Official Capacity Defendants are DISMISSED.

4 |     3.    The ADEA and FMLA claims and requests for declaratory and injunctive

5 | relief reinstating Essif to his prior position against ABOR are DISMISSED.

6 |     4.    The ADEA and FMLA claims and requests for declaratory and injunctive

7 | relief reinstating Essif to his prior position against Official Capacity Defendants remain

8 | pending.   The FMLA claim against Stasinopoulos in his individual capacity remains

9 | pending.

10 |     5.    Official Capacity Defendants and Stasinopoulos in his individual capacity

11 | shall file an Answer within the time provided in Fed.R.Civ.P. 12.

12 |     DATED this 22nd day of February, 2021.

                                        Cindy K. Jorgenson
                                    United States District Judge